```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**TINA LYMER and**
**WILLIAM LYMER,**

        **Plaintiffs,**

**v.**                  //     **CIVIL ACTION NO. 1:15CV136**
                                    **(Judge Keeley)**

**THE CITY OF CLARKSBURG,**

        **Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING THE DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT [DKT. NO. 3]**

Pending before the Court is a motion by the defendant, the City of Clarksburg ("Clarksburg" or "the City"), to dismiss the complaint filed by the defendants, Tina and William Lymer ("the Lymers"). (Dkt. No. 3). For the following reasons, the Court **DENIES** the motion.

## I. BACKGROUND

The Court's recitation of the facts is taken from the Lymers' complaint. As it must, at this early stage of the proceedings, the Court construes those facts in the light most favorable to the non-moving party, the Lymers. See De'Ionta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013).

The Lymers purchased property located at 420 Stealey Avenue in Clarksburg, West Virginia ("the property" or "the structure") from Mrs. Lymer's parents on November 6, 1992. Mrs. Lymer had resided in the home on the property since her parents purchased it in 1967.

The Lymers allege that the City adopted the State Building

Code in 2003, and that West Virginia law requires that municipalities strictly comply with and adhere to the Code. They further allege that the City knowingly, intentionally, and unlawfully amended the Code in 2009 to remove certain mandated safeguards, which made it reasonably foreseeable that the Lymers' rights would be violated.

The alleged wrongful conduct began on February 15, 2013, when two of Clarksburg's Code Enforcement Officers, Keith Kesling ("Kesling") and Jonathan Davis ("Davis"), served a Notice of Violation ("NOV") on the Lymers that related to the property. The NOV cited various sections of the Code, noted that the structure was unsafe and dangerous to occupants, and stated that it was condemned with "Demolition Order status." Furthermore, the Officers served the Lymers with a document entitled "Condemnation and Demolition Order," which declared the structure unfit for human occupancy and ordered that it be vacated by May 1, 2015.

As alleged in the complaint, when the Officers served him with the order, Mr. Lymer questioned them about what work he would need to complete in order to remove the condemnation and demolition order. Officer Kesling informed Mr. Lymer that, because he was disabled, the City would not allow him to work on the property, and the only way he could reverse the order was through an appeal to

the Clarksburg Building Code Appeals Board ("BCAB"). The Lymers complied with the order and vacated their home, which, as a result of its vacancy, has deteriorated considerably.

On July 18, 2013, the City adopted a "Resolution Declaring Certain Areas of the City of Clarksburg to be Slum or Blighted Areas." (Dkt. No. 1-1 at 16). Attached to that Resolution was a list of properties that had received demolition orders, including the Lymers' property. (Dkt. No. 1-1 at 17).

The instant lawsuit seeks damages arising out of the City's determination that the Lymers' home should be declared "slum or blight" and thereafter be demolished and removed. The City's determination, set forth in the Resolution, was based on findings of Clarksburg's Code Enforcement Office, an entity that the Lymers contend was staffed with unqualified and uncertified code inspectors operating under an improperly adopted and implemented municipal building code.

Further, the Lymers allege that the improper building code failed to give aggrieved individuals an adequate means to appeal the Code Enforcement Office's determinations. The Lymers claim they were deprived of their rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States. Specifically, they allege that Clarksburg deprived them of liberty

and property without due process of law, and took their property without just compensation.

The Lymers' complaint sets forth six counts. Counts I through IV are based on civil rights violations under 42 U.S.C. § 1983. Count I asserts liability of the City as a municipal corporation under pursuant to <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978). Count II asserts general claims that the City knew or should have known that its building code was improper. Count III claims that the City knew or should have known that its code officials were not properly trained, qualified, and certified. Count IV claims the City deprived the Lymers of constitutionally protected rights, including the right to be free from unreasonable search and seizure, the right to be free from deprivation of liberty and property without due process of law, and the right not to have their property taken without just compensation. Count V is a negligent hiring claim. Finally, count VI asserts a violation of the Americans with Disabilities Act ("ADA").

The Lymers originally filed their complaint in Harrison County Circuit Court on July 17, 2015. The City removed the case to this Court on August 11, 2015, asserting federal question jurisdiction based on the Lymers' claims of civil rights violations under 42 U.S.C. § 1983. On August 18, 2015, the City moved to dismiss the

**MEMORANDUM OPINION AND ORDER DENYING THE DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT [DKT. NO. 3]**

Lymers' complaint, pursuant to Fed. R. Civ. P. 12(b)(6).

The Court conducted a scheduling conference on October 21, 2015, during which it directed the parties to brief the due process questions raised during oral argument on the pending motion to dismiss. The matter is now fully briefed and ripe for review.

## II. DISCUSSION

In its motion to dismiss, the City makes the following arguments: (1) that the Lymers did not utilize the proper appellate procedure to challenge the City's actions; (2) that the claims are insufficiently pled; (3) that the claims are time-barred by both the applicable statute of limitations and the doctrine of laches; (4) that the ADA claim must be dismissed because it does not allege that Mr. Lymer is a qualified individual under the ADA; and (5) that West Virginia law protects the City from any state law claims and any punitive damages claims.[1]

After a thorough review of the parties' briefs and the applicable law, the Court concludes that the Lymers were not

---

[1]The fifth ground for dismissal asserted by the City, that West Virginia law protects the City from any state law claims and any punitive damages claims, is a preemptive defense. The City admits that the complaint contains no such claims, but should the Lymers assert such claims in the future, the City reserves the right to seek dismissal under the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1, et seq.

required to exhaust their administrative remedies prior to filing suit under § 1983. Further, it finds that the Lymers have adequately pled their negligent hiring and ADA claims. Finally, dismissal based on the statute of limitations or the doctrine of laches is inappropriate at this juncture. Therefore, the Court **DENIES** the City's motion to dismiss the complaint.

**A. Failure to Exhaust Administrative Remedies**

Relying on Article 1720.05 of the City of Clarksburg's municipal code, the City argues that the Lymers were required to appeal any building code enforcement decision to the BCAB. If they received an unfavorable ruling there, the City contends they were required to file a petition for a writ of certiorari with the Circuit Court of Harrison County, seeking review of the BCAB's decision. See W. Va. Code § 53-3-2. Because the Lymers proceeded directly to court without appealing to the BCAB, the City argues that their claims are barred for failure to exhaust available administrative remedies. In contrast, the Lymers assert that they were not required to exhaust their administrative remedies prior to suing under 42 U.S.C. § 1983.

**1. Exhaustion Requirement Generally**

Both parties acknowledge the "long-settled rule of judicial administration that no one is entitled to judicial relief for a

supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938); see also Cavalier Telephone, LLC. v. Virginia Elec. and Power Co., 303 F.3d 316, 322 (4th Cir. 2002) (quoting Myers). This is true even when plaintiffs claim constitutional challenges to the administrative procedure. Thetford Properties IV Ltd. Partnership v. U.S. Dept. of Housing & Urban Development, 907 F.2d 445, 448 (4th Cir. 1990). Only in the "rare case when a statute is patently unconstitutional or an agency has taken a clearly unconstitutional position" is exhaustion excused. Thetford, 907 F.2d at 448-49 ("Where it is clear that resort to administrative remedies would be incapable of affording due process, there is certainly no need to exhaust.").

The Fourth Circuit has explained the benefits of the exhaustion doctrine as follows:

> The exhaustion requirement serves many purposes, not the least of which are to allow an agency the opportunity to use its discretion and expertise to resolve a dispute without premature judicial intervention and to allow the courts to have benefit of an agency's talents through a fully developed administrative record. We find these prudential considerations no less weighty when an administrative litigant raises a constitutional challenge to a statute which an agency is charged with enforcing.

7

Thetford, 907 F.2d at 448.[2] Further, "exhaustion is particularly appropriate when the administrative remedy may eliminate the necessity of deciding constitutional questions." Thetford, 907 F.2d at 448. Of course, Congress may prescribe specific exhaustion requirements under any legislation act it enacts, including 42 U.S.C. § 1983. See Patsy v. Bd. of Regents of State of Florida, 457 U.S. 496, 500 (1982).

### 2. State Remedies Exhaustion Requirement Under § 1983 Claims

As it pertains to § 1983 claims, the exhaustion doctrine has not always been crystal clear. See Patsy, 457 U.S. at 500. Beginning with Monroe v. Pape, the Supreme Court of the United States has clarified that a § 1983 claim is "supplementary to the state law claim" and carries no need to exhaust state administrative remedies. 365 U.S. 167, 183 (1961); see also McNeese

---

[2]Thetford involved a question of federal agency administrative remedies. There, the plaintiffs challenged, among other things, the constitutionality of a federal law, which required that they exhaust their administrative remedies through the Department of Housing and Urban Development. The plaintiffs there had contended that submission to an allegedly unconstitutional administrative process was a violation of their due process rights. In that case, the Fourth Circuit found that exhaustion was required because: (1) Congress had prescribed it in the federal law in question; (2) the statute was not "patently unconstitutional" and the agency had not taken "a clearly unconstitutional position"; (3) the potential relief offered by the administrative process was adequate; and (4) submission to the process would not be futile. 907 F.2d at 449.

v. Board of Education, 373 U.S. 668, 671 (1963); McCray v. Burrell, 516 F.2d 357, 365 (4th Cir. 1975). Nevertheless, some lower courts have distinguished an absolute interpretation of that principle. See Patsy, 457 U.S. at 500 ("The question whether exhaustion of administrative remedies should ever be required in a § 1983 action has prompted vigorous debate and disagreement." (citations omitted)).

In Patsy, where the Fifth Circuit Court of Appeals had concluded that the previous decision of the Supreme Court "did not preclude the application of a 'flexible' exhaustion rule," Id. at 499, the Supreme Court rejected this view and endeavored to put to rest any such notion:

> Respondent suggests that our prior precedents do not control our decision today, arguing that these cases can be distinguished on their facts or that this Court did not "fully" consider the question whether exhaustion should be required. This contention need not detain us long. Beginning with McNeese v. Board of Education, we have on numerous occasions rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies. Respondent may be correct in arguing that several of these decisions could have been based on traditional exceptions to the exhaustion doctrine. Nevertheless, <u>this Court has stated categorically that exhaustion is not a prerequisite to an action under § 1983, and we have not deviated from that position in the 19 years since McNeese</u>. Therefore, we do not address the question presented in this case as one of first impression.

Id. at 500-01 (emphasis added) (internal citations omitted).[3] In contrast, even before Patsy, the Fourth Circuit Court of Appeals had recognized the absolute nature of the Supreme Court's ruling. "Our duty is clear: We must follow the Supreme Court, not attempt to lead it. We must hold that exhaustion is not required." McCray v. Burrell, 516 F.2d 357, 365 (4th Cir. 1975).

The City relies on several cases to advance the proposition that there is no exhaustion requirement in cases specifically involving condemnation or the taking of private property. (Dkt. No. 12 at 4). Those cases, however, are inapposite as they are either non-binding, decided prior to Patsy, factually distinguishable, or a combination of all these reasons.

The City relies on Perzanowski v. Salvio, 369 F. Supp. 223 (D. Conn. 1974), but that case is unhelpful to its cause. First, Perzanowski is not binding on this Court. Furthermore, its holding establishes only that claimants need not exhaust state judicial remedies prior to filing a § 1983 suit. The district court distinguished between claimants who had only exhausted their state

---

[3] McNeese was the first challenge to the absolute nature of the holding in Pape. In determining whether Congress had intended exhaustion of state administrative remedies to be a prerequisite to filing a § 1983 claim, the Supreme Court reviewed the legislative history of the Civil Rights Act of 1871, which was the predecessor to § 1983. See Patsy, 457 U.S. at 502.

administrative remedies and those who had additionally exhausted their state judicial remedies. That distinction no longer matters, however, in the face of the Supreme Court's holding that its exhaustion jurisprudence applies to both state administrative and state judicial exhaustion. See Steffel v. Thompson, 415 U.S. 452, 472-73 (1974) ("When federal claims are premised on [§ 1983] - as they are here - we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights."). Finally, Perzanowski was decided nearly eight years before Patsy.

In further support of its exhaustion argument, the City relies on Hall v. City of Clarksburg, et al., 2015 WL 1965046 (N.D. W.Va. May 1, 2015), where this Court relied heavily on the Fourth Circuit's decision in Timmons v. Andrews, 538 F.2d 584 (4th Cir. 1976). In Timmons, the plaintiff had appealed a decision of the City of Columbia, South Carolina, through the available administrative process. After losing her appeal, Mrs. Timmons failed to seek a petition for review with the South Carolina state court and filed a lawsuit in federal district court against the city, mayor, city council, and housing board of adjustments. Similarly, the plaintiff in Hall, who had exhausted his

11

administrative remedies by appealing to the BCAB, failed to seek state court review of the BCAB's ruling prior to filing suit in federal court.

Contrary to the City's contentions, this Court in Hall did not specifically address whether failure to exhaust administrative remedies barred Hall's § 1983 claim. The Court simply acknowledged that Hall had already exhausted any administrative remedies without any further discussion on the necessity of doing so. It then proceeded to agree with Timmons's premise that he need not exhaust his state judicial remedies prior to bringing a § 1983 suit. Hall, 2015 WL 1965046 at *10.

Timmons did not conclusively decide that plaintiffs must exhaust their administrative remedies prior to filing a § 1983 action.[4] Although it observed that "[w]hen, as here, a state institutes administrative proceedings, a respondent must normally exhaust all administrative remedies before seeking an injunction in federal court," that statement was dicta; even if it were not dicta, it would no longer bind this Court because, as the

---

[4]Timmons does not discuss the applicability of the exhaustion doctrine as it pertains specifically to § 1983 claims. The question presented was whether the district court properly invoked the abstention doctrine and refused to hear the case or issue an injunction.

subsequent rulings by both the Supreme Court in Patsy, and the Fourth Circuit in McCray, make clear, exhaustion of state administrative and judicial remedies is not a prerequisite to filing a § 1983 suit for constitutional violations.

The Lymers therefore were not required to exhaust state administrative or state judicial remedies before filing suit; accordingly, the Court **DENIES** the City's motion to dismiss for failure to exhaust.

**B.   Sufficiency of the Allegations**

The City next argues that the Lymers complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. "In order to survive a motion to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(6), a complaint must contain factual allegations sufficient to state a plausible claim for relief." Silvester v. Davis, 2014 WL 1118166, at *2 (N.D.W.Va. Mar. 20, 2014) (citing Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). "The Court must consider all well-pleaded factual allegations in a complaint as true and construe them in the light most favorable to the plaintiff." Silvester, 2014 WL 1118166 at *2 (citing Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 519 F.3d 250, 253 (4th Cir. 2009)). The Court, however, is not

obligated to accept "conclusory allegations couched as facts and nothing more." Id. "[M]ore than labels and conclusions, and a formulaic recitation of the elements of a cause of action" are required. Twombly, 550 U.S. at 545. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

The City's motion to dismiss asserts that the complaint makes it "difficult to discern the basis of the [claims] and how the same resulted in damages." (Dkt. No. 4 at 12). Specifically, the City claims to be unclear about "what the exact causes of action are in this matter and what damages are associated with same." Id.

The complaint, however, contains a sufficiently clear statement of the claims and damages asserted. The Lymers contend that the City enacted and then wrongfully modified the state building code, which, under West Virginia law, requires strict compliance. They further allege that the City hired unqualified Building Code Officers to enforce unlawfully modified building codes. Those Officers proceeded to violate the Lymers' rights by conducting improper inspections, wrongfully placarding their home, issuing a Order or Condemnation with Demolition status, ordering them to vacate the premises, and forbidding Mr. Lymer from working on the property to bring it into compliance because he was disabled.

Moreover, the Lymers allege that this misconduct culminated in a Resolution by the City that labeled their home as "slum or blight" and authorized its demolition. As damages, they claim that they lost their home, which had been in the family for almost half a century. Finally, the complaint claims that the City knowingly, intentionally, and wilfully promoted the misconduct to the detriment of the Lymers. Based on these allegations, the Court finds that the claims have been sufficiently pled.

**C.   Statute of Limitations/Laches**

The City also argues that the majority of the Lymers' complaint is time-barred under the two-year statute of limitations provided by W. Va. Code § 55-2-12(a) and the doctrine of laches,[5] both of which are affirmative defenses identified in Fed. R. Civ. P. 8(c). It is clear, however, that "a motion to dismiss filed under Federal Rule of Procedure 12(b)(6) . . . generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." Goodman, 494 F.3d 458,

---

[5]Notably, laches is a state law doctrine that applies to claims in equity. See Dunn v. Rockwell, 689 S.E.2d 255, 267 n.11 (W. Va. 2009). Notwithstanding, the defendants contend that "[a]ny claims associated with the demolition of the Plaintiff's properties are barred by the doctrine of laches." (Dkt. No. 38 at 13). Because the Lymers seeks damages under § 1983, it is not clear that West Virginia's laches defense could bar the claims in the manner argued by the defendants.

464 (4th Cir. 2007). The only exception applies "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." Id.

This case does not present one of the "relatively rare circumstances" described in Goodman. Indeed, in response to the defendants' reliance on the statute of limitations, the Lymers contend that the continuing violation doctrine[6] rescues their complaint. Regarding laches, they argue that the City is unable to establish either undue delay or prejudice. Such issues require further evidentiary development, and the Court cannot address them now.

**D.   Sufficiency of the Pleading on the Violation of the ADA Claim**

The City claims that Count VI of the Lymers' complaint must be dismissed because it does not allege that Mr. Lymer is a qualified individual with a disability, as required under Title II of the ADA. However, as noted above, the Court must take the factual allegations in the pleading as true and view them in the light most favorable to the non-moving party. Here, Mr. Lymer claims that he was denied the opportunity to work on his home and bring it into

---

[6] See A Society Without a Name v. Virginia, 655 F.3d 342, 348-49 (4th Cir. 2011) (recognizing that, in some circumstances, the continuing violation doctrine can apply to § 1983 claims).

compliance because the Officer stated that he was disabled.

Although Mr. Lymer does not plead the basis of his alleged disability, his claim is premised on the fact that the officer would not allow him to work on the home because of his disability. At no point does he contend that his disability was an erroneous assertion by the officer. In fact, the complaint states that the "[City] violated Plaintiff William Lymer's rights by prohibiting him from performing any work on his home <u>because he is disabled</u>." (Dkt. No. 1-1 at 14) (emphasis added). Conceivably, this assertion could be taken to mean that Mr. Lymer was prohibited from performing the work because the officer <u>believed</u> him to be disabled, when he, in fact, was not disabled under the ADA. It is just as arguable, however, that what the complaint clearly states is that Mr. Lymer "is disabled."

The Court concludes that the complaint sufficiently pleads a violation of the ADA, and declines to dismiss the claim because of its failure to cite a particular disability.

### IV. CONCLUSION

For the reasons discussed, the Court **DENIES** the defendant's motion to dismiss (dkt. no. 3). Further, it **SCHEDULES** a status conference for **Friday, April 15, 2016** at **4:00 p.m.** to schedule the

remainder of this case.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: March 23, 2016.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE
