```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**TINA LYMER and**
**WILLIAM LYMER,**

       **Plaintiffs,**

**v.**                  **//**    **CIVIL ACTION NO. 1:15CV136**
                                         **(Judge Keeley)**

**THE CITY OF CLARKSBURG,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19]

Pending before the Court is the motion for summary judgment filed by the defendant, the City of Clarksburg ("Clarksburg" or "the City") (dkt. no. 19). For the reasons that follow, the Court **GRANTS** the motion and **DISMISSES** this case **WITH PREJUDICE**.

### I. BACKGROUND

Tina Lymer and William Lymer ("the Lymers") purchased property located at 420 Stealey Avenue in Clarksburg, West Virginia ("the property" or "the structure") from Mrs. Lymer's parents on November 6, 1992. The home has been Mrs. Lymer's residence since her parents purchased it in 1967.

The Lymers allege that the City adopted the State Building Code in 2003, and that West Virginia law requires municipalities to comply strictly with and adhere to the Code. They further allege that the City knowingly, intentionally, and unlawfully amended the Code in 2009 to remove certain mandated safeguards, which made it reasonably foreseeable that the Lymers' rights would be violated.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19]

The alleged wrongful conduct began on February 15, 2013, when two of Clarksburg's Code Enforcement Officers, Keith Kesling ("Kesling") and Jonathan Davis ("Davis"), served a Notice of Violation ("NOV") on the Lymers that related to the condition of the property. The NOV cited various sections of the Code, noted that the structure was unsafe and dangerous to occupants, and stated that it was condemned with "Demolition Order status." Furthermore, the Officers served the Lymers with a document entitled "Condemnation and Demolition Order," which declared the structure unfit for human occupancy and ordered that it be vacated by May 1, 2015.

As alleged in the complaint, when the Officers served him with the order, Mr. Lymer questioned them about what work he would need to complete in order to remove the condemnation and demolition order. Officer Kesling informed Mr. Lymer that, because he was disabled, the City would not allow him to work on the property, and the only way he could reverse the order was through an appeal to the Clarksburg Building Code Appeals Board ("BCAB"). As a consequence, the Lymers complied with the order and vacated their home, which, as a result of its vacancy, has deteriorated considerably.

On July 18, 2013, the City adopted a "Resolution Declaring

Certain Areas of the City of Clarksburg to be Slum or Blighted Areas." (Dkt. No. 1-1 at 16). Attached to that Resolution was a list of properties that had received demolition orders, including the Lymers' property. (Dkt. No. 1-1 at 17).

The instant lawsuit seeks damages arising out of the City's determination that the Lymers' home should be declared "slum or blight" and thereafter be demolished and removed. The City's determination, set forth in the Resolution, was based on findings of Clarksburg's Code Enforcement Office, an entity that the Lymers contend was staffed with unqualified and uncertified code inspectors operating under an improperly adopted and implemented municipal building code.

Further, the Lymers allege that the improper building code failed to give aggrieved individuals an adequate means to appeal the Code Enforcement Office's determinations. The Lymers claim that they were deprived of their rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States. Specifically, they allege that Clarksburg deprived them of liberty and property without due process of law, and took their property without just compensation.

The Lymers' complaint includes six counts. Counts I through IV

are based on civil rights violations under 42 U.S.C. § 1983. Count I asserts liability of the City as a municipal corporation pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). Count II asserts general claims that the City knew or should have known that its building code was improper. Count III claims that the City knew or should have known that its code officials were not properly trained, qualified, or certified. Count IV claims the City deprived the Lymers of constitutionally protected rights, including the right to be free from unreasonable search and seizure, the right to be free from deprivation of liberty and property without due process of law, and the right not to have their property taken without just compensation. Count V is a negligent hiring claim. Finally, Count VI asserts a violation of the Americans with Disabilities Act ("ADA").

The Lymers originally filed their complaint in Harrison County Circuit Court on July 17, 2015. The City removed the case to this Court on August 11, 2015, asserting federal question jurisdiction based on the Lymers' claims of civil rights violations under 42 U.S.C. § 1983. On August 18, 2015, pursuant to Fed. R. Civ. P. 12(b)(6), the City filed a motion to dismiss the Lymers' complaint,(dkt. no. 3), which the Court denied on March 23, 2016 (dkt. no. 15).

**LYMER v. CITY OF CLARKSBURG**                                          **1:15CV136**

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19]**

On July 13, 2016, the City moved for summary judgment on all claims against it, arguing that the statute of limitations had expired prior to the Lymers' filing of the suit. The Lymers timely filed their response, and the City filed its reply. The matter is now fully briefed and ripe for review.

## II. LEGAL STANDARD

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

### III. APPLICABLE LAW

Claims brought under § 1983 are subject to the applicable analogous state law statute of limitations. Sattler v. Johnson, 857 F.2d 224, 226 n. 3 (4th Cir. 1988) (citing McCausland v. Mason Cty. Bd. of Educ., 649 F.2d 278, 279 (4th Cir. 1981). In West Virginia, "[e]very personal action for which no limitation is otherwise prescribed shall be brought (a) [w]ithin two years next after the right to bring the same shall have accrued, if it be for damage to property . . . ." W. Va. Code § 55-2-12(a).

Section 1983 claims accrue when "the plaintiff 'knows or has reason to know of the injury which is the basis of the action.' " A Society Without A Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011) (quoting Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975)). If alleged harm is the result of a series of acts or omissions, the

continuing violation doctrine may apply, and the limitations period begins to run from the last violation. Howard v. City of Clarksburg, 2016 WL 183558, at *3 (N.D.W.Va. 2016) (citing Green v. Rubenstein, 644 F. Supp. 2d 723, 747 (S.D.W. Va. 2009)).

The continuing violation doctrine applies when a plaintiff can establish that the unconstitutional or illegal act "was a fixed and continuing practice." A Society Without A Name, 655 F.3d at 348 (quoting Nat'l Advert. Co. v. City of Raleigh, 947 F.2d 1158, 1166 (4th Cir. 1991) (quotation marks omitted)). "Allegations of entirely new violations do not implicate the continuing violation doctrine; rather, the same alleged violation must occur at the time of each act." Howard, 2016 WL 183558, at *3 (citing A Society Without A Name, 655 F.3d at 348).

Notably, a continuing violation "is occasioned by continual unlawful acts, not continual ill effects from an original violation." City of Raleigh, 947 F.2d at 1166 (quoting Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir. 1981) (internal quotation marks omitted)); see, e.g., A Society Without A Name, 655 F.3d at 348-49 (differentiating between a continuing violation and the continual effect of the original violation); Jersey Heights Neighborhood Ass'n v. Glendening, 174 F.3d 180, 189 (4th Cir. 1999) (holding that every subsequent refusal to reconsider the original

violation does not "revive the limitations period" as a continuing violation).

## IV. DISCUSSION

The City argues that it is entitled to summary judgment because the Lymers filed their suit beyond the expiration of the applicable two-year statute of limitations set forth in W. Va. Code § 55-2-12. The Lymers filed their complaint on July 15, 2015. According to the City, the statute of limitations may have begun to run as early as either 2003 or 2009, the dates on which it changed its building code, occurrences which the Lymers allege led to the deprivation of their rights. In any event, the City argues that the last possible date on which the statute of limitation could have begun to run would have been February 15, 2013, the date on which the code enforcement officials served the Lymers with the NOV and the Condemnation and Demolition Order.

In response, the Lymers contend that their claims are not barred, but instead are saved under the continuing violation doctrine because their complaint established a "fixed and continuing practice." Dkt. No. 21 at 3. They maintain that the City's declaration on July 18, 2013, that their property was "slum and blight," was part of an ongoing course of conduct and therefore a continuing violation.

This Court has squarely addressed this issue in two previous cases, Howard v. Clarksburg, 2016 WL 183558 (N.D.W.Va. Jan. 24, 2016); and Hall v. City of Clarksburg, 2016 WL 5680218 (N.D.W.Va. Sept. 30, 2016). In both cases, it evaluated complaints that were substantially similar to the Lymers' complaint here, and found that the continuing violation doctrine did not operate to save their claims.

In Hall, the Court concluded that all of the actions alleged in the complaint "clearly constitute[d] ongoing effects of the original decision to amend the City ordinances." Hall, 2016 WL 5680218, at *5. In Howard, a case with facts almost identical to the case at bar, the Court stated that "[t]he statute of limitations began to run on September 21, 2009, when the City served [Howard] with the notice of violation and condemnation and demolition order." 2016 WL 183558, at *5. Indeed, "[t]he latest date on which it could have begun to run was October 5, 2011, when the Clarksburg Municipal Court entered a condemnation and demolition order authorizing city officials to enter the property to prepare for demolition following Howard's unsuccessful appeal." Id. Accordingly, because Howard filed her complaint on July 17, 2015, her claims were deemed time-barred. Id.

The Lymers nevertheless argue that their case is

9

distinguishable from <u>Howard</u> because that was the Howards' "fourth suit on the topic." They go on to note that this is their first suit on the matter, and that they brought it within two years of City's declaration that their property was slum or blighted. This argument is inapposite as the number of suits filed on this issue simply has no bearing on the resolution of the statute of limitation issue present here.

The Lymers attempt to analogize the cases, noting that, in <u>Howard</u>, the Court indicated that the "last date the statute of limitations could have begun to run was October 5, 2011, when the Clarksburg Municipal Court entered a condemnation and demolition order authorizing city officials to enter the property to prepare for demolition." Dkt. No. 21 at 5; <u>see also</u> <u>Howard</u>, 2016 WL 183558, at *5. The Lymers use this statement to argue that the same must be true here: "The statute of limitations could last have begun to run in the [Lymers'] case on the date that the City Council placed the [Lymers'] property on the demolition list, thereby authorizing city officials to begin to prepare for demolition." Dkt. No. 21 at 6.

This comparison misses the mark. The date on which the NOV and condemnation and demolition order was issued in this case was February 15, 2013, which, in accord with <u>Howard</u>, is the last possible date on which the statute of limitations could have begun

to run against the Lymers. Contrary to the Lymers contention, the City's July 18, 2013, resolution is not an ongoing violation, but, at best, an ongoing ill. As the Court stated in Howard, when addressing the identical argument:

> Similarly, Howard's argument here that the 2013 resolution was a continuing violation lacks merit. Any harm to her occurred in 2009, when she received the BOCA's condemnation and demolition order. At that time, the City could have demolished her property had it possessed the funds to do so. The 2013 resolution merely provided the City with the funding to effectuate its 2009 order. . . . The 2013 resolution was therefore a continuing ill effect of the 2009 condemnation and demolition order.

Id. (citing Jersey Heights, 174 F.3d at 189). The 2013 resolution on which the Lymers rely here is the identical resolution relied on by Howard. Accordingly, there is no ongoing violation that saves their claims from the bar of the statute of limitations.

Finally, as to Mr. Lymer's ADA claim, it is even more clear that the statute of limitations has run. The lone allegation related to this claim is that, on February 15, 2013, Kesling refused to allow Mr. Lymer to work on his property because of his handicap. It is evident then, based on Mr. Lymer's own allegation, that his claim accrued on February 15, 2013. As he did not file suit until July 17, 2015, over five months after the expiration of the statute of limitations, that claim also is barred.

**LYMER v. CITY OF CLARKSBURG** 1:15CV136

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 19]**

At bottom, this case is virtually identical to Howard, and, both for the reasons contained in the Court's order in that case, as well as the reasoning here, the Court concludes that the Lymers' claims are barred by the statute of limitations. Consequently, it **GRANTS** the City's motion for summary judgment.

### V. CONCLUSION

For the reasons discussed, the Court **GRANTS** the defendant's motion for summary judgment (dkt. no. 19), **DISMISSES** this case **WITH PREJUDICE**, and **ORDERS** it stricken from the Court's active docket.

It is so **ORDERED.**

Pursuant to Fed. R. Civ. P. 58, the Court directs the Clerk of Court to enter a separate judgment order and to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: March 10, 2017.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE